UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DALE ANDERSON et al.,<br><br>                      Plaintiff,<br>  v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>                      Defendant. | CASE NO. 3:20-cv-05119-DGE<br><br>ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) |

## I     INTRODUCTION

Before the Court is Plaintiffs Dale and Leta Anderson's Motion for Statutory Damages, Prejudgment Interest, Reasonable Attorney Fees, and Nontaxable Costs. (Dkt. No. 106.) Upon review of that motion, Defendant's response (Dkt. No. 111), Plaintiffs' reply (Dkt. No. 112), and the remaining record, the Court GRANTS IN PART and DENIES IN PART the motion.

## II     BACKGROUND

The Court presumes familiarity with the facts of this case. (*See* Dkt. No. 56 at 1–3.) After a trial on the merits, the jury found for Plaintiffs on all claims, finding State Farm acted in

ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106)ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) - 1

1  bad faith, violated the Consumer Protection Act ("CPA"), and was negligent in breaching one or

2  more of the duties of insurance agents, proximately causing damage to the Andersons in the

3  amount of $1 million.  (Dkt. No. 103.)  On May 16, 2024, the Court entered judgment on the

4  verdict in the amount of $1 million (Dkt. No. 104), which the Andersons now move to amend to

5  include statutory treble damages and prejudgment interest, as well as for an award of reasonable

6  attorney fees and nontaxable litigation costs.  (Dkt. No. 106 at 3.)

### III   DISCUSSION

#### A.  Statutory damages under the CPA

Plaintiffs move for an award of treble damages in the amount of $25,000 under the CPA. (Dkt. No. 106 at 3–4.)  Plaintiffs argue under § 19.86.090 of the Washington Revised code, "the Court may, in its discretion, increase the award of damages up to an amount not to exceed three times the actual damages sustained" and "such increased damage may not exceed twenty-five thousand dollars" when a defendant is found to have violated § 19.86.020.  Rev. Code. Wash. § 19.86.090.

Defendant argues treble damages must be sought from the jury.  (Dkt. No. 111 at 8–9.) In support of its argument, Defendant cites *MKB Constructors v. Am. Zurich Ins. Co.* 83 F. Supp. 3d 1078, 1082 (W.D. Wash. 2015) and *Northwestern Mut. Life Ins. Co. v. Koch*, 771 F. Supp. 2d 1253 (W.D. Wash. 2009).  (Dkt. No. 111 at 8.)  These cases are not applicable because they discuss jury-awarded enhanced damages under the Insurance Fair Conduct Act pursuant Washington Revised Code § 48.30.015(2) rather than court-awarded treble damages under the CPA pursuant to § 19.86.020.  *MKB Constructors*, 83 F. Supp. 3d at 1082; *Northwestern Mut.*, 771 F. Supp. 2d at 1254.  Defendant also argues treble damages are punitive damages, and thus must be determined by the jury if requested by the plaintiff.  (Dkt. No. 111 at 8.)  This argument

is misplaced.  Treble damages are not punitive damages; rather, they are statutory liquidated damages.  *Segar v. Allstate Fire and Casualty Ins. Co.*, No. C21-1526JLR, 2022 WL 102035, at *4 n.8 (W.D. Wash. Jan. 11, 2022).  The statute clearly states "the Court may, in its discretion, increase the award of damages" under the CPA; a jury is not required to award these statutory damages.  Rev. Code. Wash. § 19.86.090.

Treble damages are based upon the actual damages awarded in the underlying case.  *See Gamble v. State Farm Mut. Auto. Ins. Co.*, No. C19-5956, 2022 WL 92985, at *7 (W.D. Wash. Jan. 10, 2022).  Defendant argues even if treble damages could be awarded by the Court on a post-judgment motion, because the verdict form did not set forth the specific damages awarded based on each of the three legal theories, there is no way to determine the "actual" damages for the CPA claim or whether more than nominal damages were awarded under the CPA.  (Dkt. No. 111 at 9.)  Treble damages may only be based upon actual damages; because there is not an established base number to treble, Defendant argues there is no way to determine a treble damages award. (*Id.*)

In *Gamble*, the case Plaintiffs cited in their reply, the jury awarded discrete damages for each violation of law: $50,000 for breach of contract, $50,000 for violating the Insurance Fair Conduct Act, and $50,000 for violating the Consumer Protection Act, among other awards.  *Gamble*, No. C19-5956, Dkt. No. 135 (W.D. Wash. Nov. 3, 2021).  Based on the $50,000 in actual damages under the CPA, the Court awarded treble damages at the $25,000 maximum.  *See Gamble*, 2022 WL 92985, at *7.

Here, the verdict form simply asked the jury: "What is the amount of the Anderson[s'] damages?" (Dkt. No. 103 at 3.)  The jury did not partition the $1 million award by the bad faith, CPA, or negligence claims.  Because the Court has no amount of "actual damages" that can be

ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) - 3

attributable to the CPA claim, the Court is without a base number to treble. *See also St. Paul Fire & Marine Ins. Co. v. Updegrave*, 656 P.2d 1130, 1134 (1983) (finding no award of treble damages where insured "did not prove that it suffered any monetary damages of a particular sum"). Plaintiffs fail to identify, nor is this Court able to find, a case in which treble damages were awarded on top of a generalized damages award not divided by claim. Because the Andersons' actual damages under the CPA are unknown, the Court cannot treble them under § 19.86.090.

### B. Prejudgment interest

Plaintiffs also request the jury's award be amended to include prejudgment interest fees. (Dkt. No. 106 at 4.) Prejudgment interest is available "(1) when an amount claimed is 'liquidated' or (2) when the amount of an 'unliquidated' claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion." *Rekhter v. State, Dept. of Soc. and Health Servs.*, 323 P.3d 1036, 1047 (Wash. 2014). A claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton*, 145 P.3d 371, 377 (Wash. 2006). A claim is unliquidated where "the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed." *Id*.

In this case, the amount claimed is liquidated. The jury's award of $1,000,000 is the amount Plaintiffs paid when they settled the underlying litigation without coverage by the policy

State Farm negligently failed to procure.  The amount is fixed from the facts proven and the jury did not exercise discretion in determining what the Andersons' award should be.  Indeed, "it now appears to be nearly axiomatic that 'settlements in underlying civil actions are liquidated amounts'" and "a settlement made in an underlying civil action represents a liquidated amount and an award of prejudgment interest is appropriate." *Reynolds Metals Co. v. Alcan, Inc.*, No. C04-0175RJB, 2006 WL 1806186, at *4 (W.D. Wash. June 29, 2006); *see also King County v. Puget Sound Power & Light Co.*, 852 P.2d 313 (Wash. App. 1993) (citing *Valloric v. Dravo Corp.,* 357 S.E.2d 207, 215–216 (1987) ("It is widely acknowledged that 'a settlement made in an underlying civil action represents a liquidated amount with regard to the subsequent indemnity claim.'").

Defendant argues prejudgment interest is unavailable because the settlement had not been found reasonable prior to trial.  (Dkt. No. 111 at 2–4.)  But *Reynolds* says nothing about the settlement being deemed reasonable.  Defendant points to *Lakes v. von der Mehden*, 70 P.3d 154, 157 (2003) for the proposition that a defendant's admission that medical bills—damages which are considered an unliquidated sum—were reasonable and necessary did not render them liquidated.  (Dkt. No. 111 at 3.)  *Lakes* is inapplicable here because the jury's award, as a civil settlement, is already considered liquidated under *Reynolds*.  Whether State Farm admits or does not admit the settlement is reasonable has no bearing on that fact.

Finding the sum is liquidated, the Court turns to the applicable interest rate.  Where a successful plaintiff's claims sound primarily in tort, as is the case here, the applicable interest rate is "two percentage points above the prime interest rate" on the first day of the calendar month preceding entry of judgment.  *See MKB Constructors*, 83 F. Supp. 3d at 1083–1084 (citing Wash. Rev. Code § 4.56.110(3)(b)).  Plaintiffs calculate this to be 8.50%, yielding a

prejudgment interest rate of 10.5% per annum, or 0.028767% per day.  (Dkt. No. 106 at 6) (citing Money Rates, WALL STREET JOURNAL, https://www.wsj.com/market-data/bonds/moneyrates (last visited July 29, 2024)).  In cases involving settlement of an underlying claim, interest is calculated from the date of payment.  *King County*, 852 P.2d at 315 ("The obligation to reimburse the indemnitee attaches the moment the indemnitee makes the payment that the indemnitor was obligated under its agreement to make, and, the amount of that payment being certain, interest commences to run from that date."); *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 189 P.3d 777, 784 (2008).  Calculated from December 3, 2018, the date the Andersons contributed $1 million to the Trejo settlement, the prejudgment interest totals $572,750.97.  State Farm does not challenge this calculation, and the Court finds it to be reasonable and in-line with the applicable caselaw.

Because the award is liquidated, the jury's award shall be amended to include prejudgment interest fees totaling $572,750.97.

**C.  Attorney fees**

The lodestar method is "the default principle for fee calculation in Washington."  *Brand v. Dep't of Labor & Indus.*, 989 P.2d 1111, 1119 (Wash. 1999).  Washington law presumes that a properly calculated lodestar figure represents reasonable compensation for counsel.  *Henningsen v. Worldcom, Inc.*, 9 P.3d 948, 959 (Wash. Ct. App. 2000).

The lodestar method multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.  *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  After calculating this, courts then assess whether it is necessary to adjust the presumptively reasonable lodestar figure based on twelve factors.  *Id.* at 252 n.4; *see*

1  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), (describing the twelve factors).

          1. <u>Rate</u>

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984).

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The court may also rely on its own knowledge and experience in determining what rates are reasonable. *See Salyer v. Hotels.com GP, LLC*, Case No. C13-1966-RSL, 2015 WL 3893079, at *2 (W.D. Wash. June 23, 2015) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Joseph Vance, the lead attorney on this matter, has been licensed in Oregon and Washington for nearly thirty years. (Dkt. No. 107 at 3.) He is primarily a litigation and trial attorney, and his regular hourly rate is $505 per hour. (*Id.*) Jason Rosenbaum, an eighth-year associate at Vance's firm Landerholm, has an hourly rate of $325, but billed his trial time at a rate of $225, equivalent to that of a paralegal employed at Landerholm. (*Id.*) Other Landerholm attorneys who worked on the case and their hourly rates were submitted as follows:

| Name | Year of First Admission | Hourly Rate(s) | Hours |
|---|---|---|---|
| Zachary H. Stoumbos | 1977 | $350 | 24.6 |
| Phillip J. Haberthur | 2006 | $395 (2022) – $475 (2024) | 9 |
| R. Bryce Sinner | 2010 | $310 (2020) | 4 |
| Claire Rootjes | 2010 | $295 (2019) | 12.9 |
| Nicholas Cody | 2019 | $250 (2019) – $375 (2024) | 69.9 |

(*Id.* at 4.)  Brad Smith, who has been licensed in Washington for 38 years, requests a rate of $275 per hour, which he quoted to the Andersons at the time of his original retainer.  (Dkt. No. 108 at 2–3.)  Over the course of the case, he took on a more involved, co-counsel role than originally contemplated, but did not raise the rate charged to the Andersons, which is now considerably lower than that which he charges to his other clients.  (*Id.*)  Staff at Smith's law firm, Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., as well as his previous firm, Feltman Ewing, P.S., contributed to the Andersons' success in the matter, including associate Samir Dizdarevic-Miller (hourly rate of $180) and interns Anthony C. Greene and Tayler M. Canet (hourly rate of $90).  (Dkt. Nos. 108 at 3; 108-1, 108-2.)

Plaintiffs' counsel also submitted the declaration of Philip A. Talmadge, an appellate attorney licensed to practice in Washington since 1976.  (Dkt. No. 109 at 1–2.)  Talmadge has "considerable interest and experience on attorney fees in civil litigation[,]" and has written articles on attorney fees and their calculations.  (*Id.* at 2.)  Talmadge has served as an expert witness on attorney fees in federal and state court proceedings and has represented clients on appeal in numerous cases involving attorney fees.  (*Id.*)  Talmadge reviewed the motion, the accompanying declarations from Vance and Smith, as well as the underlying pleadings and motion papers.  (*Id.* at 3.)  Talmadge states the Landerholm firm's rates were reasonable for attorneys and paralegals of their background and experience in Clark County and are below the

ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) - 8

rates typically charged in Pierce and King County.  (*Id.* at 6.)  He also concludes the Etter McMahon and Feltman Ewing firm rates were reasonable for attorneys of their background and experience in Spokane County and are below the rates typically charged in Pierce and King County.  (*Id.*)  Further, the various firms utilized paralegals and non-attorney staff billed at rates ranging from $60 to $150 per hour, which are reasonable and in line with those charged in King and Pierce Counties.  (*Id.*)

Defendants do not challenge the claimed rates.  Based on the declarations from Plaintiff's counsel, Talmadge's declaration, and the Court's own knowledge and experience, the Court finds Plaintiffs' counsel's requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

2.  Hours

In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).  A district court may exclude such hours from an attorney fees motion using one of two methods.  The court may either: (1) conduct an "hour-by hour analysis of the fee request" and exclude unreasonable hours; or (2) "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal citations omitted).

The determination of fees "should not result in a second major litigation" and trial courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).  The essential goal in shifting fees "is to do rough justice, not to achieve

auditing perfection." *Id.* Trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.* There is no precise rule or formula for making these determinations. *Id.* at 436–437. However, in determining an appropriate attorney's fee, the "result is what matters" and the most critical factor is "the degree of success obtained." *Id.* at 435–436.

Vance submits his firm, Landerholm, spent 858.7 total hours on the case. (Dkt. No. 107 at 2; *see also* Dkt. No. 107-1.) Vance spent 170.1 hours, Bradley Anderson spent 208.6 hours, Jason Rosenbaum spent 210.1 hours. (Dkt. No. 107 at 3.) The other attorney timekeepers at Landerholm (identified above) spent hours ranging from 4 to 69.9, totaling 120.4 between them. (*Id.* at 4.) Smith submits the services rendered by his two firms total 437.2 total hours of work. (Dkt. No. 108 at 2.) Smith identifies which fees the Andersons paid to his previous firm, Feltman Ewing (Dkt. No. 108-1), and those paid to his current firm, Etter McMahon (Dkt. No. 108-2).

Plaintiffs' counsel has reduced their fee request for time spent on "arguably unsuccessful efforts, namely the Andersons' earlier motion for summary judgment and their defense of State Farm's motion for summary judgment on their claims under Washington's Insurance Fair Conduct Act" which were adjudicated in favor of State Farm.[1] (Dkt. Nos. 106 at 8; 56 at 11.)

Talmadge, who reviewed the fee itemizations, believes the hours for which Plaintiffs' counsel requests attorney fees are reasonable. (Dkt. No. 109 at 6.) In Talmadge's opinion, "the time spent by the Andersons' counsel was particularly reasonable for a matter that was as

---

[1] Defendant points out those fees were removed only from the Landerholm bills and not from the Feltman Ewing invoices. (Dkt. No. 111 at 7.) Plaintiffs explain that deducted entries were highlighted on the fee invoices attached to Brad Smith's first declaration, but appear to have been removed prior to filing, presumably through the process of redacting privileged information. (Dkt. No. 113 at 2.) When calculating the total compensable fees incurred, a total of 45.7 hours were deducted. (*Id.*)

ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) - 10

complex and challenging as this one" because it was not a routine insurance case, but rather "a case involving both the bad faith conduct of an adjuster and the negligence of insurance agents, inextricably linked theories premised on relevant facts spanning many years." (*Id.* at 6–7.)

Defendant challenges Plaintiffs' hours calculation, arguing they should not receive fees "for their attempts to amend their complaint and retract their waiver of emotional distress damages, as that effort was also unsuccessful and unrelated to the CPA claim[.]" (Dkt. No. 111 at 7.) Defendant argues Plaintiffs' fee claim should be reduced to reflect work on claims on which they were successful only and should not include fees for work on claims which do not support fee awards. (*Id.*) There is no legal basis for this argument. Plaintiff already redacted time spent on an unsuccessful summary judgment motion, and Defendant cites no law that Courts are required to divide fee requests by "successful" and "unsuccessful" work done during litigation—especially here, where Plaintiffs were successful on the claims brought to trial. Dissecting work done on various claims in the way Defendant requests is next to impossible where, as is the case here, all claims arise out of the same common core of facts and are based on related legal theories. *See Hensley v. Eckerhart*, 461 U.S. 424, 434–435 (1983); *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986). The Court finds Plaintiffs' claimed hours to be reasonable. Plaintiffs are awarded $371,958.00 in attorney fees.

Plaintiffs also submit attorney fees and costs associated with filing this motion. (Dkt. No. 112 at 7.) These fees include 2.9 hours from Etter McMahon and 31.9 hours from Landerholm totaling $12,814.00, as well as $825.00 in costs to Talmadge for his analysis of the reasonableness of the fees and hours. (Dkt. Nos. 113 at 2–3; 114 at 2–5; 114-1.) Upon review, the Court finds the number of hours worked on the motion and reply in support excessive. Pursuant to the Court's authority to make across-the-board percentage cuts, *Gonzalez*, 729 F.3d

at 1203, the Court reduces those fees by 10% to $11,532.60.  Thus, Plaintiffs are awarded a total of $383,490.60 ($371,958.00 plus $11,532.60) in attorney fees and $825.00 in costs.

Plaintiffs also argue they incurred significant fees during the Trejo litigation, when they were forced to retain counsel to assist in efforts to compel State Farm to provide full benefits of coverage.  (Dkt. No. 106 at 9.)  Plaintiffs attempt to recover these fees in addition to the attorney fees incurred in this litigation.  (*Id.*)

Because bad faith is a tort, an insured is not limited to economic damages.  *Miller v. Kenny*, 325 P.3d 278, 293 (Wash. Ct. App. 2014).  Damages resulting from a bad faith claim are limited only to those proximately caused by the insurer's breach of duty.  *Dees v. Allstate Ins. Co.*, 933 F.Supp.2d 1299, 1308 (W.D. Wash. 2013).  The costs of litigation can be included as damages proximately caused by an insurer's bad faith:

> Where the insured has caused damages clearly exceeding policy limits, an insurer's failure to offer policy limits exposes the insured to the risk of an excess judgment. Once it is determined that the insurer acted in bad faith by failing to settle, typically the chief component of the insured's damage caused by that failure will be the insured's liability to the third party. This component is measured by the amount of the third party's [settlement] against the insured. However, the insured's damages may include as an additional component the damages caused to him by the insurer's bad faith. Examples include the potential effect on the insured's credit rating, damage to reputation, loss of business opportunities, and loss of control of the case. Other examples are loss of interest, **attorney fees and costs**, financial penalties for delayed payments, and emotional distress, anxiety, and fear.

325 P.3d at 293 (citations omitted) (emphasis added).

But, as damages, these underlying attorney fees must be awarded by a jury.  Plaintiffs could have asked the jury to award damages proximately caused by State Farm's bad faith, including the attorney fees associated with litigating and settling the Trejo lawsuit.  Because Plaintiffs did not ask the jury for these attorney fees as damages, the Court cannot now award these costs post-judgment.

ORDER ON MOTION FOR STATUTORY DAMAGES, PREJUDGMENT INTEREST, REASONABLE ATTORNEY FEES, AND NONTAXABLE COSTS (DKT. NO. 106) - 12

**D. Non-taxable litigation costs**

Finally, Plaintiffs argue they are entitled to recover nontaxable litigation costs incurred while prosecuting their claims, including expert witness fees and travel and lodging expenses. (Dkt. No. 106 at 11–12.) The parties argue the recovery of non-taxable litigation costs is governed by *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991). Under *Olympic Steamship*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." 811 P.2d at 681.

*Olympic Steamship* is applicable when the insurer forces the insured to litigate questions of coverage. *McGreevy v. Oregon Mut. Ins. Co.*, 904 P.2d 731, 734 n.4 (1995). "Coverage disputes include both cases in which the issue of any coverage is disputed and cases in which 'the extent of the benefit provided by an insurance contract' is at issue." *Jin v. GEICO Advantage Ins. Co.*, No. C22-1714, 2023 WL 7212543 at *5 (W.D. Wash. Nov. 2, 2023).

This case was not a coverage dispute, so *Olympic Steamship* does not apply. There was no question of whether a policy covered the incident; the question was whether Defendant's agents acted negligently in failing to procure the policy Plaintiffs requested that *would have* covered them.

However, costs are recoverable based on Plaintiffs' success on their CPA claim. The CPA permits a plaintiff to "recover the actual damages sustained by him or her, or both, together with the **costs of the suit**, including a reasonable attorney's fee." Wash. Rev. Code Ann. § 19.86.090 (emphasis added). State Farm argues that, although the CPA provides for costs recovery, those costs are limited and do not include the expenses Plaintiffs wish to recover. (Dkt. No. 111 at 4.) The Washington Supreme Court has held that "costs" as utilized in

Washington Revised Code § 19.86.090 are "narrowly defined," finding it "gives the plaintiff in a Consumer Protection Act action an unwarranted recovery to extend costs beyond those statutorily defined in [Washington Revised Code] 4.84.010." *Nordstrom, Inc. v. Tampourlos*, 733 P.2d 208, 212 (Wash. 1987).  The costs defined in Washington Revised Code § 4.84.010 include filing, service, and notary fees; reasonable expenses incurred in obtaining reports and records (like medical, tax, personnel, insurance, employment, police, school, and bank records); and transcription fees.  *See* Rev. Code Wash. § 4.84.010.  Neither expert fees nor travel and lodging expenses are included in this list.  *See Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 26 P.3d 910, 917 (Wash. 2001) (citing *McGreevy v. Oregon Mut. Ins. Co.*, 951 P.2d 798 (Wash. Ct. App. 1998) and explaining expert fees are non-recoverable as costs or attorney fees in cases falling outside *Olympic Steamship*).  In their reply, Plaintiffs do not address State Farm's argument that these costs are not recoverable under *Nordstrom.*

It is possible the costs could be considered "damages" flowing from State Farm's tortuous conduct; because State Farm acted negligently and in bad faith, the Andersons were forced to litigate the issue and incurred these expenses as damages.  As with the claimed attorney fees in the underlying Trejo lawsuit, because Plaintiffs did not ask the jury to award such damages, the Court cannot award them now.

## IV    CONCLUSION

Accordingly, and having considered Plaintiffs' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Plaintiffs' Motion for Statutory Damages, Prejudgment Interest, Attorney Fees, And Nontaxable Costs is GRANTED in part and DENIED in part:

1. Plaintiffs' motion for an award of treble damages under Washington Revised Code § 19.86.090 is DENIED;

2. Plaintiffs are awarded $383,490.60 in attorney fees and $825.00 in costs;

3. Plaintiffs are awarded $572,750.97 in prejudgment interest; and

4. Plaintiffs' motion for an award of non-taxable costs is DENIED.

DATED this 31st day of July, 2024.

David G. Estudillo
United States District Judge